UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

MARITZA RIVERA and MELIZA RIVERA, infants under the age of 14, by Barbara Rivera, and BARBARA RIVERA, individually,

Plaintiffs,

-against-

BRIAN LETO and ADAM DOLCE,

Defendants.

**MEMORANDUM OPINION AND ORDER**

04 Civ. 7072 (PGG)

PAUL G. GARDEPHE, U.S.D.J.

The claims in this case arise from Defendants' warrantless entry into and search of Plaintiffs' home. On September 14, 2007, Defendants moved for partial summary judgment. For the reasons stated below, Defendants' motion is granted in part and denied in part.

## BACKGROUND

### A. Facts

During the night of September 7, 2003, a Department of Transportation warehouse in LaGrange, New York was broken into and vandalized. The vandals spray-painted the inside of the building and broke the windows of a school bus and a dump truck in the parking lot. (Pltf. Rule 56.1 Response ¶¶ 1-2) Defendants Leto and Dolce, New York State troopers, assisted in the investigation of this crime the following day. Nick Rivera – the son of Plaintiff Barbara Rivera and the older brother of Plaintiffs Maritza and Meliza Rivera – lives in an apartment complex located near the warehouse. The caretaker of the complex identified Nick to Trooper Leto as a troublemaker and as a

"subject to look at" concerning the vandalism. (Id. ¶¶ 3-8) Leto was also told that Nick "liked to jump out of windows to evade the police," had previously "struggled with a trooper," and "had a mental health issue." (Id. ¶¶ 31-32)

On the morning of September 8, 2003, Leto went to the Rivera residence and met with Barbara Rivera, who explained that Nick had been away at school for several months. (Id. ¶ 12) Dolce separately spoke to Nick's father, who also stated that Nick was not at home. (Id. ¶¶ 13-14)

The next day, Dolce told Leto that he had heard that Nick had recently been seen in the area. (Id. ¶ 17) While driving by the vandalized DOT warehouse, the Defendants saw some middle school-aged children get off a school bus, and decided to ask them if they had any information about the crime. (Id. ¶¶ 18-19) One of the children "brought up" Nick Rivera's name. (Id. ¶ 19; Dolce Dep. 12-13; Leto Dep. 19) The Defendants then decided to revisit the Rivera residence. (Pltf. Rule 56.1 Response ¶ 21)

The troopers arrived at the Rivera residence at approximately 4:30 p.m. and knocked on the door. (Id. ¶¶ 21-22) Maritza and Meliza Rivera, twin girls who appeared to the Defendants to be about 10 years old, opened the door.[1] (Id. ¶¶ 24-26)

The parties differ as to what happened next. Defendants assert that one of them asked Maritza if anyone was home, to which she responded that Nick was home, while Meliza responded that no one else was home. (Def. Rule 56.1 Statement ¶¶ 27, 29) Plaintiffs claim that one of the Defendants asked specifically whether Nick was home, to which Maritza initially answered that he was, while Meliza said that he was not. (Pltf.

---

[1] The twins were actually 9 years old at this time. (Def. Br. at 4 n.2)

Rule 56.1 Response ¶¶ 27, 29) Both sides agree that, at this point, the troopers entered the Rivera home. (Id. ¶ 30)[2]

The parties also disagree as to what happened once Defendants entered the Rivera home, including whether Leto pointed his handgun at Maritza. For purposes of this motion, however, the material facts concerning Defendants' activities in the Rivera home are largely undisputed. Defendants both went upstairs to the second floor, with Leto calling for Nick to come speak with them. (Id. ¶¶ 37-38) Both Defendants had their guns drawn while they were on the stairs. (Leto Dep. 58) Once upstairs, Defendants opened doors and looked inside the upstairs rooms, still with their guns drawn. (Pltf. Rule 56.1 Response ¶ 39; Leto Dep. 63) Returning downstairs, they found that one of the twins was on the phone with Barbara Rivera, who arrived at home approximately 10 minutes later. (Id. ¶¶ 40-42)

**B. The Riveras' Claims and the Pending Motion**

The Complaint asserts five claims based on Defendants' conduct in entering and searching the Rivera home: (1) an equal protection claim on behalf of Maritza and Meliza Rivera (Count I); (2) an unlawful search and seizure claim on behalf of all plaintiffs (Count II); (3) an excessive use of force claim against Leto, on behalf of Maritza and Meliza Rivera (Count III); (4) a claim that Maritza and Meliza Rivera were injured by Defendants' negligence "in the manner in which they set about to enter and search" their residence (Count IV); and (5) a claim that Barbara Rivera is entitled to

---

[2] The parties dispute whether Maritza and Meliza consented to the Defendants' entry into the home. For purposes of this motion, Defendants do not argue that their entry was justified on the basis of consent. (Def. Br. at 5 n.5) Moreover, Defendants concede that they did not have probable cause to arrest Nick or to search the residence. (Def. Reply Br. at 5)

damages due to Defendants' negligent infliction of emotional distress, for the lost services of her daughters, and for medical expenses that she has incurred and will incur in the future for treatment for her daughters (Count V).

Defendants concede that disputes over material facts preclude judgment as a matter of law with respect to Count III, Count IV to the extent it relates to Leto's conduct in drawing his gun, and Count V to the extent Barbara Rivera seeks to recover damages relating to medical expenses she has already incurred for treatment of her daughters. (Def. Br. at 2 n.1, 20 n.8, 22) Defendants have moved for summary judgment with respect to the remainder of Plaintiffs' claims.

**DISCUSSION**

A court must grant summary judgment if "there is no genuine issue as to any material fact" and the moving party has shown that it "is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). "A fact is 'material' for . . . purposes [of summary judgment] if it 'might affect the outcome of the suit under governing law.'" Electrical Inspectors, Inc. v. Village of East Hills, 320 F.3d 110, 117 (2d Cir. 2003) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)). "An issue of fact is 'genuine' if 'the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" Id.

"To survive . . . [a] motion for summary judgment," the non-moving party "must establish that there is a genuine issue of material fact" by doing more than "simply show[ing] that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 585-86 (1986). A court should not grant summary judgment if, "after resolving all ambiguities and drawing all

inferences in favor of the non-moving party," it determines that "a rational juror could find in favor of that party." Pinto v. Allstate Ins. Co., 221 F.3d 394, 398 (2d Cir. 2000).

## I. The Riveras' Unlawful Entry and Search Claims

Plaintiffs assert that Defendants' warrantless search of their home violated their constitutional rights.[3] Defendants argue that they are entitled to summary judgment on this claim because: (1) their conduct was justified by exigent circumstances – specifically, the need to ensure the safety of Meliza, Maritza and Nick Rivera (Def. Br. at 12); and (2) they are protected by qualified immunity (id. at 13-18). As explained below, summary judgment on this claim is not appropriate because Defendants have failed to meet their burden of showing that no material facts are in dispute. Moreover, on this record, the Court cannot find that Defendants are entitled to qualified immunity as a matter of law.

### A. The "Exigent Circumstances" Exception to the Rule Against Warrantless Entries and Searches

It is undisputed that Defendants entered and searched the Rivera home without a warrant. "The warrant requirement of the Fourth Amendment guarantees the fundamental right to be free from government intrusion into the privacy of one's home." United States v. MacDonald, 916 F.2d 766, 769 (2d Cir. 1990). Accordingly, it is a "basic principle of Fourth Amendment law that searches and seizures inside a home without a warrant are presumptively unreasonable." Brigham City, Utah v. Stuart, 547 U.S. 398, 403 (2006) (quotations omitted). However, the warrant requirement does not

---

[3] The Court will analyze whether summary judgment is warranted under federal law; both sides agree that Plaintiffs' related state constitutional claims stand or fall with Plaintiffs' federal constitutional claims. (Def. Br. at 19; Pltf. Br. at 24)

apply "in those situations where exigent circumstances demand that law enforcement agents act without delay." MacDonald, 916 F.2d at 769. Under the exigent circumstances exception, "police officers may enter a dwelling without a warrant to render emergency aid and assistance to a person whom they reasonably believe to be in distress and in need of that assistance." Tierney v. Davidson, 133 F.3d 189, 196 (2d Cir. 1998) (internal quotation omitted); see also Brigham City, 547 U.S. at 403 ("[L]aw enforcement officers may enter a home without a warrant to render emergency assistance to an injured occupant or to protect an occupant from imminent injury.").

In determining whether the exigent circumstances exception to the warrant requirement applies, "[t]he core question is whether the facts, as they appeared at the moment of entry, would lead a reasonable, experienced officer . . . to believe that there was an 'urgent need to render aid or take action. . . .'" United States v. Klump, 536 F.3d 113, 117-18 (2d Cir. 2008), quoting McDonald, 916 F.2d at 769; see also MacDonald, 916 F.2d at 769 ("The essential question in determining whether exigent circumstances justified a warrantless entry is whether law enforcement agents were confronted by an 'urgent need' to render aid or take action."). The law enforcement officer "bear[s] a heavy burden when attempting to demonstrate an urgent need. . . ." Welsh v. Wisconsin, 466 U.S. 740, 749-50 (1984). The officer must demonstrate that his conduct was objectively reasonable; "[t]he officer's subjective motivation is irrelevant." Stuart, 547 U.S. at 404. Finally, summary judgment for the law enforcement officer is appropriate if "no reasonable jury could conclude other than that exigent circumstances existed sufficient to justify the warrantless entry." Anthony v. City of New York, 339 F.3d 129, 135 (2d Cir. 2003) (affirming grant of summary judgment on this ground).

**B. Leto's and Dolce's Entry Into the Rivera Home**

Defendants argue that it was objectively reasonable for them to believe that exigent circumstances existed when they entered the Rivera home because: (1) Leto had been told that "Nick Rivera had a propensity to jump out of windows to evade police," "had a mental health issue[,] and had previously struggled with a trooper" (Def. Br. at 10); and (2) the twins had given conflicting responses as to whether they were home alone (id. at 10-11). Defendants are not entitled to judgment as a matter of law on this claim, however, because (1) a material factual issue exists as to what the Defendants were told about whether the twins were home alone; and (2) regardless of what the Defendants were told about who was home, the Court cannot say as a matter of law that "no reasonable jury could conclude other than that exigent circumstances existed." Anthony, 339 F.3d at 135.

**1. There Is a Genuine Factual Dispute as to What Defendants Were Told Before They Entered the Rivera Home**

Defendants rely heavily on the factual assertion that one of the twins told them prior to their entry that "no one else was home," and argue that they therefore had reason to believe that the twins might be home alone. (Def. Br. at 11) However, Maritza Rivera testified at her deposition that, prior to entry, Defendants asked only whether Nick Rivera was home, and the twins accordingly responded only as to whether their brother was home. (Maritza Rivera Dep. 87:22-23, 91:5-15 (testifying that before they entered, one of the defendants asked "Is Nick Rivera here?," and that she initially said yes while Meliza said no)).

Moreover, Defendant Dolce's deposition testimony is at least as consistent with Plaintiffs' version of events as it is with Defendants' version. Dolce testified that

when the twins opened the door, "I believe I asked if Nick was home or if there was a parent or legal guardian at home. I don't recall if that came out first or not, but that was asked, yes." (Dolce Dep. 17:16-22) In further describing the conversation, he said his "initial[]" conversation was "inquiring if Nick was home" (id. 18:21-25); that Maritza responded that "he was upstairs sleeping" (id. 19:3); that he "asked her to go upstairs and wake him" (id. 19:5); that she then "turned back to her sister and then turned back towards us and said he's not here" (id. 19:13-15); and that Defendants then entered the Rivera home (id. 19:21-25).[4]

Because there is a factual dispute about whether the twins told Defendants that they were home alone – as opposed to saying merely that Nick was (or was not) home – this Court cannot find as a matter of law that "no reasonable jury could conclude other than that exigent circumstances existed. . . ." Anthony, 339 F.3d at 135.

**2. The Evidence Does Not Show That Exigent Circumstances Existed**

[4] As noted earlier, Defendants' alleged subjective belief as to whether exigent circumstances existed at the time they entered the home is not relevant here, Stuart, 547 U.S. at 404, and the Court does not consider their subjective beliefs in deciding this motion. However, the Court notes that the evidence on this record does not support Defendants' assertion that they entered the Rivera home "primarily because they were concerned that two young children might be home alone." (Def. Br. at 11) To the contrary, the weight of the evidence indicates that Defendants were primarily interested in questioning Nick Rivera, as evidenced by the Defendants going upstairs upon entry, with Leto calling for Nick to speak with them. (Pltf. Rule 56.1 Response ¶¶ 37-38) When asked at his deposition why they entered the house, Dolce testified: "The reason that we entered the house was because Trooper Leto had asked permission and they said yes, and there was confusion as to whether Nick was home or not, because they were giving us – because Maritza . . . [h]ad changed her story. . . ." (Dolce Dep. 31:24-32:6) Leto similarly testified that his purpose in entering the house was "to continue [his] conversation with [the twins] and to see if they would get an adult from the house" because the twins "had said Nick was at the residence and [he] wanted to continue speaking with them to see why they were giving conflicting stories." (Leto Dep. 26:10-12, 16-19)

Even if the material facts were undisputed, Defendants still would not be entitled to judgment as a matter of law, because a reasonable jury could find that "exigent circumstances" did not exist. Exigent circumstances exist when there is an "urgent need to render aid," MacDonald, 916 F.2d at 769, because someone is "in distress," Tierney, 133 F.3d at 196, or "injured" or threatened with "imminent injury." Stuart, 547 U.S. at 403. A warrantless entry is not objectively reasonable where it is "based on mere surmise, [as opposed to] . . . objective facts reasonably suggesting that an actual emergency involving human safety then existed. . . ." United States v. Paige, 493 F. Supp. 2d 641, 647-48 (W.D.N.Y. 2007). Even in the context of a child's safety, the "mere 'possibility' of danger" does not "make it objectively reasonable to believe that the circumstances were exigent." Hurlman v. Rice, 927 F.2d 74, 81 (2d Cir. 1991); see also Caruso v. Forslund, 47 F.3d 27, 33 (2d Cir. 1995) (the fact that police "were considering the welfare of a child when they entered the home, . . . standing alone," is insufficient to "enable . . . [a] jury to conclude that the search was reasonable").

Moreover, a reasonable jury could conclude that no one who was potentially in the Rivera home was "in distress," Tierney, 133 F.3d at 196, or "injured," or threatened with "imminent injury," Stuart, 547 U.S. at 403, at the time Defendants entered the home. Even if a reasonable jury could conclude based on the evidence in the record that the Defendants could reasonably have believed that there was a possibility of danger to the twins or to Nick Rivera, that would not be a sufficient basis to find that exigent circumstances existed as a matter of law. Hurlman, 927 F.3d at 81. In cases where courts have granted summary judgment to defendants under the "exigent circumstances" exception, there was clear factual evidence showing an urgent need to

render assistance. See, e.g., Anthony, 339 F.3d at 135-36 (as a matter of law, exigent circumstances existed where police officers entered the plaintiff's home in response to a 911 call from that address from a woman who claimed to be under attack); Tierney, 133 F.3d at 197 (as a matter of law, exigent circumstances existed where police officer was "responding to what he was told was a 'bad' domestic disturbance," was "informed by neighbors that the shouting had ended right before his arrival," and, as he approached the house, he "heard nothing and found a broken window pane").[5]

Defendants do offer a declaration from a police procedures expert, Henry Branche, in support of their "exigent circumstances" argument. However, Branche's opinion is based in part on resolving the disputed issue of fact in Defendants' favor – he states that before entering the Rivera home, Defendants were told by the twins that no one else was home (except possibly Nick Rivera). (Branche Decl. ¶¶ 27-28) Moreover, Branche's opinion about the objective reasonableness of the Defendants' conduct appears to be based on the false factual premise that there was a predator or burglar in the area. (Branche Decl. ¶ 55) There is no such evidence. In any event, the Court must resolve ambiguities and draw all factual inferences in the non-moving parties' favor in deciding

---

[5] Defendants also argue that their entry was justified because they were "fulfilling their 'community caretaking'" function. (Def. Br. at 12) However, they do not cite any decisions supporting their argument that there is a separate "community caretaking" exception that would apply to the facts of this case in the absence of exigent circumstances. The decisions they rely on simply recognize that exigent circumstances may justify seizing a child from his parent's home without a warrant. See, e.g., Tennebaum v. Williams, 193 F.3d 581, 605 (2d Cir. 1999) (the Fourth Amendment "exigent circumstances" exception applies to the warrantless seizure of a child and "permits removal of a child where the state officers making the search or seizure 'have reason to believe that life or limb is in immediate jeopardy'"). As discussed above, Defendants have not shown that they are entitled to summary judgment on the issue of whether exigent circumstances existed.

summary judgment. Pinto, 221 F.3d at 398. Branche's declaration does not provide a basis for granting summary judgment to Defendants on this claim.[6]

**C. Defendants' Search of the Rivera Home**

Defendants are also not entitled to summary judgment on Plaintiffs' unlawful search claims. Like a warrantless entry into a home, a "[w]arrantless search[] inside a home . . . [is] presumptively unreasonable. . . . [It] 'must be strictly circumscribed by the exigencies which justify its initiation.'" Tierney, 133 F.3d at 196-97 (quoting Mincey v. Arizona, 437 U.S. 385, 393 (1978)); see also id. at 197-98 ("The officer's post-entry conduct must be carefully limited to achieving the objective which justified the entry – the officer may do no more than is reasonably necessary to ascertain whether someone is in need of assistance and to provide that assistance." (quoting 3 Wayne LaFave, Search and Seizure, § 6.6(a), at 400-01 (3d ed. 1996))).

Defendants argue that their search of the Rivera home was justified by the same facts that allegedly justified their entry into the home. (Def. Br. at 12 (arguing that the search was necessary because "[o]nce in the premises the behavior of the children did not alleviate the troopers' concern for their safety and any risk Nick Rivera may have been to himself").) As noted above, there are material issues of fact concerning the Defendants' initial entry into the house as well as substantial legal questions surrounding that entry. Moreover, as explained below, the Court cannot hold as a matter of law that

---

[6] Plaintiffs have moved to strike Branche's declaration and to bar him from testifying at trial on the ground that his expert report was not timely disclosed. Because there are other grounds for not relying on Branche's declaration in deciding the instant motion, the Court will defer deciding Plaintiffs' motion until after Defendants have confirmed that they intend to offer Branche's testimony at trial.

Defendants properly circumscribed their search of the house after entry. Tierney, 133 F.3d at 196-97.

As is the case with respect to Plaintiffs' unlawful entry claim, the evidence in the record is not such that a jury could conclude only that a reasonable officer would have believed searching the Rivera residence was "necessary to ascertain whether someone [was] in need of assistance and to provide that assistance." Id. at 197-98. Nor is it clear that searching the Rivera home (with guns drawn) was "reasonably necessary" to ensure the twins' safety or to prevent Nick from injuring himself in the event he was home and decided to exit via a window. Defendants also do not explain why they could not have contacted the twins' mother, Barbara Rivera – who they spoke with the previous day – and determine from her whether it was safe for the twins to be home alone and/or when she intended to return. One of the 9-year-old twins easily reached her mother while the troopers were searching the upstairs of the house; the Defendants spoke with her after completing their search; and Rivera arrived back at the apartment 10 minutes after her daughter called. (Pltf. Rule 56.1 Response ¶¶ 40-42)

The facts here are not at all similar to those in cases where courts have found that the need to render aid or assistance justified a warrantless search. See, e.g., Tierney, 133 F.3d at 198 (search was justified by the need to ensure that the individuals who answered the door at a house where a "serious domestic dispute" had been reported were not being intimidated by persons in a different room); United States v. Barone, 330 F.2d 543, 545 (2d Cir. 1964) (search was justified to determine the source of screaming). In short, Defendants have not shown as a matter of law that they are entitled to a finding

that their search of the Rivera home was justified by exigent circumstances or that the search they conducted was properly circumscribed.[7]

**D. Defendants Are Not Entitled to Qualified Immunity as a Matter of Law**

Defendants argue that even if they violated Plaintiffs' constitutional rights, they are still entitled to summary judgment under the doctrine of qualified immunity. In deciding this issue, the Court must: (1) "determine whether the plaintiff[s] ha[ve] alleged a violation of a constitutional right;" (2) "consider if the violated right was clearly established at the time of the conduct;" and (3) if the first two factors are met, decide whether the plaintiffs have "demonstrate[d] that defendants' actions were not objectively reasonable." Harhay v. Town of Ellington Bd. of Educ., 323 F.3d 206, 211 (2d Cir. 2003). In resolving the last inquiry, the Court must consider the information the Defendants possessed at the time of the acts in question and the reasonable beliefs they might have had based on that information (even if those beliefs were mistaken). Moore v. Vega, 371 F.3d 110, 116-17 (2d Cir. 2004).

---

[7] Plaintiffs argue that Defendants are not entitled to summary judgment because they cannot show that they had probable cause to enter and search the Rivera home, and because there is a dispute as to whether their entry into the Rivera home was forcible. (Pltf. Br. at 2-4, 9-11) However, the existence of probable cause and the peaceful (or forcible) nature of the entry are factors that courts consider when the alleged exigent circumstance is the "need for quick action," for instance to prevent the destruction of evidence, United States v. Fields, 113 F.3d 313, 323 (2d Cir. 1997) – not when the alleged exigent circumstance, as Defendants argue here, is the need to give aid or assistance. Compare Fields, 113 F.3d at 323 (listing "a clear showing of probable cause" and "the peaceful circumstances of the entry" as two of six factors to consider in determining whether a warrantless entry was justified by the "need for quick action") with Tierney, 133 F.3d at 196-98 (not discussing any of the six factors listed in Fields in deciding whether exigent circumstances existed due to the need to render emergency aid or assistance).

"A defendant is . . . entitled to summary judgment on qualified immunity grounds if a jury, viewing all facts in the light most favorable to the plaintiff, could conclude that 'officers of reasonable competence could disagree' on the legality of the defendant's actions." Cerrone v. Brown, 246 F.3d 194, 202 (2d Cir. 2001) (internal quotation omitted). "[W]hen the facts that bear on the circumstances are not in dispute, the issue of whether the defendants acted reasonably should be determined by the court on a motion for summary judgment." Tierney, 133 F.3d at 194. However, "summary judgment on qualified immunity grounds is not appropriate when there are facts in dispute that are material to a determination of reasonableness." Kerman v. City of New York, 261 F.3d 229, 240 (2d Cir. 2001) (internal quotation omitted) (holding that judgment as a matter of law on qualified immunity as to an excessive force claim was improper because the facts relating to the degree of force used by the defendants were in dispute).

The first two elements of the qualified immunity inquiry must be resolved in Plaintiffs' favor. As explained above, Plaintiffs have alleged a violation of their constitutional right not to have their home entered and searched without a warrant in the absence of exigent circumstances. Moreover, Defendants do not argue that the law concerning this right was not clearly established as of September 2003. Nor could they plausibly do so, in light of the numerous and consistent Second Circuit decisions from the 1990s establishing when "exigent circumstances" justify a warrantless entry or search. See, e.g., MacDonald, 916 F.3d at 769; Tierney, 133 F.3d at 196.

With respect to the "objective reasonableness" test – the third step of the qualified immunity inquiry – there are "facts in dispute that are material to a

determination of reasonableness." Kerman, 261 F.3d at 240. As stated above, the parties dispute, inter alia, what Defendants were told about who was inside the Rivera residence. Therefore, the Defendants are not entitled to judgment as a matter of law that their entry into and search of the Rivera home was objectively reasonable.[8]

## II. Plaintiffs' Negligence Claims

In Count IV of the Complaint, Plaintiffs seek recovery under the theory that Defendants were "negligent in the manner in which they set about to enter and search plaintiffs' residence." (Complaint ¶ 21) In their brief opposing summary judgment, Plaintiffs assert only one basis for their negligence claim – that Defendant Dolce was negligent in drawing his gun. (Pltf. Br. at 23-24) Defendants argue that they are entitled to summary judgment on this claim because it was reasonable for Dolce to draw his gun and the twins did not see him with his gun drawn. (Def. Br. at 20)

The elements of a common law negligence claim are: "(1) the existence of a duty on defendant's part as to plaintiff; (2) a breach of this duty; and (3) injury to the plaintiff as a result thereof." Akins v. Glens Falls City School Dist., 53 N.Y.2d 325, 333 (1981). The only injury that Plaintiffs have asserted with respect to Defendants' drawing their guns is the mental anguish that Maritza and Meliza Rivera allegedly suffered as the result of witnessing these acts. (Complaint ¶¶ 8, 21) Plaintiffs cannot show that Dolce

---

[8] Plaintiffs have not moved for summary judgment, so the Court need not reach the question of whether, as a matter of law, an officer of reasonable competence might believe that exigent circumstances existed justifying Defendants' entry and search based on Defendants' version of the facts – i.e., two girls who appeared to be 10 years old were either home alone at 4:30 p.m., or home with their older brother (who had an unspecified, unconfirmed "mental health issue" and who sometimes left the home via a window when the police appeared). For present purposes, it is enough for the Court to hold that it cannot find, as a matter of law, that any competent officer would agree that Defendants' actions were lawful.

caused that alleged injury, however, unless they can show that they were aware that Dolce drew his gun. While Plaintiffs argue that there is a genuine factual dispute concerning the circumstances under which Dolce drew his gun (Pltf. Br. at 23-24), both Meliza and Maritza Rivera have testified that they never saw Dolce with his gun drawn. (Meliza Rivera Dep. 98; Maritza Rivera Dep. 116) Accordingly, Dolce is entitled to summary judgment on Plaintiffs' negligence claim against him.

## III. Barbara Rivera's Claims for Damages

In Count V, Barbara Rivera seeks damages for herself on three grounds: (1) negligent infliction of emotional distress (Complaint ¶¶ 23, 26); (2) loss of her daughters' services (id. ¶¶ 24-25); and (3) already-incurred and future expenses for her daughters' medical treatment (id. ¶ 25). Defendants have moved for summary judgment with respect to all of Barbara Rivera's claims except her claim for the medical expenses that she has already incurred. (Def. Br. at 2)

### A. Rivera's Claims for Loss of Services and Future Medical Expenses

"[A] parent may recover for loss of services of a child upon a proper showing of the value of lost services." Santoro v. Donnelly, 340 F. Supp. 2d 464, 492 (S.D.N.Y. 2004). However, Rivera has not offered any evidence of the value of the alleged lost services of her daughters. Further, in her brief opposing summary judgment, she does not contest Defendants' assertion that she is not entitled to recover damages for lost services. (See Pltf. Br. at 24-25)

Rivera also does not contest Defendants' assertion that she is not entitled to recover damages for future medical expenses incurred in treating her daughters. (Id.) Defendants are correct that Rivera is not entitled to such damages; "only the child

possesses th[e] right of recovery" for "future medical expenses." Santoro, 240 F. Supp. 2d at 493.

Therefore, Defendants' motion for summary judgment is granted with respect to Rivera's claims for damages relating to lost services and future medical expenses.

**B. Rivera's Claim for Negligent Infliction of Emotional Distress**

The Defendants argue that they are entitled to summary judgment on Barbara Rivera's claim for negligent infliction of emotional distress arising from the alleged injuries to her daughters. (Pltf. Br. at 24-25) "Under New York law, it is well-settled that a person can only recover for emotional distress from the serious injury of a family member where that person was herself in the zone of danger." Santoro, 240 F. Supp. at 493. Rivera argues that "[h]er actions in traveling to her home and passing by the troopers to safeguard her daughters . . . caused her to enter the zone of danger and raise a triable issue of fact as to whether or not she was within the zone of danger for negligence purposes." (Pltf. Br. at 25)

However, a plaintiff may recover under a "zone of danger" theory only if the "defendant negligently expose[d] . . . [the] plaintiff to an unreasonable risk of bodily injury or death." Bovsun v. Sanperi, 61 N.Y.2d 219, 230-31 (1984); see also Erony v. Alza Corp., 913 F. Supp. 195, 201 (S.D.N.Y. 1995) ("Under New York law, a party may only recover for emotional damage resulting from witnessing an injury to an immediate family member if the alleged negligent act simultaneously exposes both the injured party and the plaintiff to an unreasonable risk of bodily injury or death. . . . If a plaintiff merely suffers emotional damages and was never in the 'zone of danger,' plaintiff cannot

recover.”). Rivera does not argue – nor does it appear that she could plausibly argue – that she feared for her own safety or was exposed to a risk of physical harm. At most, she has offered evidence that she was 10 minutes away (by car) from the location where the (emotional) harm occurred. That is not enough. Courts have routinely refused to allow recovery under a “zone of danger” theory in cases where the plaintiff was much nearer physically to where the harm occurred than in this case, but, as in this case, was not at risk of injury herself. See, e.g., Zea v. Kolb, 613 N.Y.S.2d 88, 88 (4th Dep’t 1994) (no recovery allowed where the plaintiff was approximately twelve feet away from a car accident that killed her daughter, but admitted that she was never in danger from the car); Gonzalez v. New York City Housing Authority, 580 N.Y.S.2d 760, 761 (1st Dep’t 1992) (no recovery allowed where the plaintiff was in the rear of an elevator when the elevator doors closed on and killed her daughter, because plaintiff “was not in imminent danger of physical harm at the time of the accident”).

The sole decision that Rivera cites in support of her argument is not to the contrary, because in that case there was at least a question as to whether the plaintiff was exposed to a risk of physical harm. In that decision, Columbini v. Westchester County Healthcare Corp., 808 N.Y.S.2d 705 (2d Dep’t 2005), the court found that there was a triable issue of fact as to whether the plaintiff entered the zone of danger when he returned to the room his son was in to help extricate him from an MRI machine after an oxygen tank flew into the machine and hit the son. Id. at 716. It appears that there was at least some possibility of physical danger to the plaintiff in that case, and the court’s holding was based entirely on cases where the plaintiff was arguably exposed to physical danger during an attempted rescue. Id. citing Wallace v. Parks Corp., 629 N.Y.S.2d 570

(4th Dep't 1995) (holding that three plaintiffs who were exposed to a fire and sustained physical injuries while trying to rescue their wife/mother were in the zone of danger, but that a fourth plaintiff who ran out of the house when the fire began was not in the zone of danger and therefore could not recover); Hass v. Manhattan & Bronx Surface Transit Operating Auth., 612 N.Y.S.2d 134 (1st Dep't 1994) (holding that the plaintiff was in the zone of danger because the "evidence demonstrated that plaintiff feared for her safety" and "was exposed to unreasonable risk of injury"); DiMarco v. Supermarkets General Corp., 524 N.Y.S.2d 743 (2d Dep't 1988) (allowing recovery under "zone of danger" theory based on evidence that the defendants' assault on the plaintiff's father "created an unreasonable risk of harm" to the plaintiff, who tried to stop the assault).

Because Rivera has offered no evidence that the defendants here "negligently expose[d] . . . [her] to an unreasonable risk of bodily injury or death," Bovsun, 61 N.Y.2d at 230-31, the Court grants Defendants' motion for summary judgment as to Rivera's claim for negligent infliction of emotional distress.

## IV. Plaintiffs' Equal Protection Claims

In their brief opposing summary judgment, Plaintiffs concede that their equal protection claims (Count I and a part of Count II) are not viable. (Pltf. Br. at 1) Accordingly, Defendants' motion for summary judgment is granted with respect to those claims.

## CONCLUSION

For the foregoing reasons, Defendants' motion for summary judgment (Docket No. 15) is DENIED with respect to the federal and state constitutional claims for unlawful entry and search stated in Count II. Defendants' motion for summary judgment is GRANTED with respect to Plaintiffs' equal protection claims (Count I and a part of

Count II), their negligence claim (Count IV) against Defendant Dolce, and Barbara Rivera's claims for damages (Count V) relating to lost services, future medical expenses, and negligent infliction of emotional distress, which are dismissed.[9]

The parties are directed to submit the pre-trial filings described in the Court's individual rules 9.A. and 9.B.1. no later than December 29, 2008. A settlement conference in this matter will be held at 2:00 p.m. on December 11, 2008. Counsel should have settlement authority (or attend the conference with a client representative who has such authority).

Dated: New York, New York
November 25, 2008

SO ORDERED

Paul G. Gardephe
United States District Judge

[9] Thus, the following claims remain to be tried: Count II (except to the extent it asserts an equal protection claim), Count III, Count IV as against Defendant Leto, and Count V with respect to Barbara Rivera's claim for medical expenses that she has already incurred.